COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-078-CV
 
BEARDEN INVESTIGATIVE AGENCY, INC.       
           
           
           
    APPELLANT
V.
ANN MELVIN AND JOHN MELVIN       
           
           
           
           
    APPELLEES
------------
FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY
------------
MEMORANDUM OPINION
(1)
------------
Appellant, Bearden Investigative
Agency, Inc. (Bearden), appeals the trial court's take-nothing judgment in
Bearden's suit against the appellees, Ann and John Melvin. Bearden contends that
(1) the Melvins promised to pay the agency; (2) Bearden is entitled to recovery
based on quasi-contractual claims; (3) the statute of frauds does not apply
because the Melvins were primary obligors on the debt with their daughter,
Catherine; and (4) Bearden's intervention into Catherine's divorce proceeding
does not preclude its action against the Melvins. We affirm.
I. Factual
Background
According to a memorandum dated
April 10, 1997, Catherine MacPete contacted Bearden and stated that her
attorney, Mike McCurley, referred her to the agency. Catherine wanted Bearden to
undertake a sweep for bugs and taps at the home where she lived with her parents
Ann and John Melvin. Bearden later talked with Mr. Melvin who agreed to write a
$4,000 retainer check to Bearden for the sweep. Because the McCurley law firm
wanted to maintain the attorney-client privilege with all information, McCurley
notified Bearden that he wanted to write the $4,000 check. Mr. Melvin's check
was either returned or subsequently destroyed.
Catherine and McCurley entered a
contract on April 11, 1997 with Bearden that states on its face that client (McCurley)
and client's client (Catherine) are the responsible parties for paying for
Bearden's services. It further states that the agreement may be modified or
amended only in writing, duly executed by both the client and the investigative
agency, and shall remain in full force and effect until amended or rejected in
writing by one of the parties. Mr. and Mrs. Melvin were not parties to the
contract, did not enter a separate written agreement with Bearden, and never
received a rate schedule or any summary of the services supplied by Bearden.
Bearden sent the billing statements to the McCurley law firm because there was
an understanding that Bearden's bills would be added to the attorney's fees
statement. Bearden did not send an invoice or statement recapping past invoices
to the Melvins until July 25, 1997.
On May 28, 1997 Bearden recorded a
telephone conversation with Mrs. Melvin in which she implied that she would be
responsible for providing payment to Bearden. The Melvins, however, were
providing loans to Catherine who in turn paid off her bills as necessary,
including paying McCurley for legal services. Mrs. Melvin assumed that McCurley
had explained the payment situation to Bearden; therefore, she never discussed
the loan payment situation with the agency. After the initial $4,000 payment for
the sweep of the home, Bearden never received any more compensation for its
services, which totaled $34,199.72.
Bearden later intervened in
Catherine's divorce proceeding and settled with her through the entry of an
agreed final judgment for $20,000 on January 12, 2000. Meanwhile, Bearden
brought the present action against the Melvins in February of 1998. On December
6, 2001, the trial court entered a take-nothing judgment against Bearden. The
court signed the Melvins' proposed findings of fact and conclusions of law,
which included findings that the Melvins had not promised to pay Bearden, that
there had not been any consideration to support any promise, that no services
had been provided by Bearden to the Melvins, that no services had been accepted,
used, or enjoyed by the Melvins, and that the Melvins had no notice that Bearden
was expecting to be paid by them. The trial court also concluded that Bearden's
claim was barred by the statute of frauds and that its suit and judgment against
Catherine operated to waive and estop any claim against the Melvins. This appeal
followed.
II. Standard of
Review
Findings of fact entered in a case
tried to the court have the same force and dignity as a jury's answers to jury
questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991). The trial court's findings of fact are reviewable for legal and factual
sufficiency of the evidence to support them by the same standards that are
applied in reviewing evidence supporting a jury's answer. Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).
In reviewing an issue asserting
that an answer is "against the great weight and preponderance" of the
evidence, we must consider and weigh all of the evidence, both the evidence that
tends to prove the existence of a vital fact as well as evidence that tends to
disprove its existence. Ames v. Ames, 776 S.W.2d 154, 158-59 (Tex.
1989), cert. denied, 494 U.S. 1080 (1990); Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). So considering the evidence, if a finding is so
contrary to the great weight and preponderance of the evidence as to be
manifestly unjust, the issue should be sustained, regardless of whether there is
some evidence to support it. Watson v. Prewitt, 159 Tex. 305, 320
S.W.2d 815, 816 (1959); In re King's Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951).
Conclusions of law, including
implied conclusions of law, are always reviewable. See W. Wendell Hall,
Standards of Review in Texas, 29 St. Mary's L.J. 351, 501 (1998). We
review a trial court's actual or implied conclusions of law de novo as legal
questions. See, e.g., Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998) (applying de novo standard to question of subject matter
jurisdiction), cert. denied, 526 U.S. 1144 (1999); Michel v. Rocket
Eng'g Corp., 45 S.W.3d 658, 667 (Tex. App.--Fort Worth 2001, no pet.)
(holding "[w]e review all questions of law de novo"). A trial court's
conclusion of law will not be reversed unless it is erroneous as a matter of
law. Arch Petroleum, Inc. v. Sharp, 958 S.W.2d 475, 477 (Tex.
App.--Austin 1997, no pet.). Conclusions of law are not erroneous and will be
upheld on appeal if the judgment can be sustained on any legal theory supported
by the evidence. Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex.
App.--San Antonio 1999, pet. denied).
III. Does the
agency's agreed final judgment against
Catherine operate as res judicata, collateral
estoppel, or otherwise bar
its claim against the Melvins?
Bearden contends that Conclusion of
Law No. 4, that Bearden's judgment against Catherine operated to waive and estop
it from asserting claims against the Melvins, is without any basis or support.
The Melvins respond that the judgment against Catherine established that she is
the primary obligor on the debt; therefore, Bearden has waived its argument that
the Melvins are primary obligors and is estopped from relitigating the issue in
this lawsuit.
Res judicata precludes relitigation
of claims that have been finally adjudicated or that arise out of the same
subject matter and that could have been litigated in the prior action. Barr
v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). It requires
proof of the following elements: (1) a prior final judgment on the merits by a
court of competent jurisdiction; (2) identity of parties or those in privity
with them; and (3) a second action based on the same claims as were raised or
could have been raised in the first action. Amstadt v. U.S. Brass Corp.,
919 S.W.2d 644, 652 (Tex. 1996).
The Melvins argue that the
settlement agreement and agreed final judgment against Catherine bar any claims
that Bearden may have against them. Bearden alleges that the agreement and
judgment only establishes Catherine's liability, but does not affect the Melvins'
liability as joint obligors. The agreed final judgment stipulated that judgment
should be entered in favor of Bearden against Catherine as a full resolution of
all claims between the two parties in the matter. The judgment failed to
indicate that Catherine was the sole or primary obligor on Bearden's claim.
Thus, the first required element of res judicata, a prior final judgment on the
merits by a court of competent jurisdiction, fails since Bearden never had any
prior claim against the Melvins reduced to judgment. Bearden's only prior
judgment was against Catherine. Therefore, Bearden's suit is not barred by res
judicata.
The doctrine of collateral estoppel
is used to prevent a party from relitigating an issue that is "previously
litigated and lost." Quinney Elec., Inc. v. Kondos Entm't, Inc.,
988 S.W.2d 212, 213 (Tex. 1999). To invoke collateral estoppel successfully, a
party must establish the following elements: (1) the facts sought to be
litigated in the second action were fairly and fully litigated in the first
action; (2) those facts were essential to the judgment in the first action; and
(3) the parties were cast as adversaries in the first action. Mann v. Old
Republic Nat'l Title Ins. Co., 975 S.W.2d 347, 350 (Tex. App.--Houston [14th
Dist.] 1998, no pet.). Because the agreed final judgment only concerned
Catherine, the facts sought to be litigated in Bearden's action against the
Melvins were not fairly and fully litigated in the action against Catherine.
Thus, the first element of collateral estoppel fails. Furthermore, the parties
were not cast as adversaries in the first action because Bearden intervened in
Catherine's divorce proceeding, a proceeding to which the Melvins were not
parties. Because the elements of collateral estoppel are not met, Bearden's
claim is not barred by collateral estoppel. (2)
Having determined that Bearden's
claim was not precluded by res judicata or collateral estoppel, the trial
court's Conclusion of Law No. 4 is incorrect. We sustain Bearden's fourth issue.
IV. Did the Melvins
obligate themselves to pay Bearden?
In its first issue, Bearden
contends that the Melvins promised to pay Bearden and that simply because one
obligor executes a writing that is not signed by the other obligors, this does
not affect the other obligors' liability. Bearden argues that there is no
evidence to support a finding that the Melvins did not promise to pay, and/or it
is against the great weight and preponderance of the evidence. In its third
issue, Bearden argues that the statute of frauds does not apply because the
Melvins are primary obligors on the debt. The Melvins respond that the evidence
supports the trial court's finding, and Bearden's action is barred by the
statute of frauds.
According to the "main
purpose" doctrine, we conclude that Bearden's claim is barred by the
statute of frauds as an unenforceable oral agreement, and the trial court's
finding is not so contrary to the great weight and preponderance of the evidence
as to be manifestly unjust.
The supreme court has held that the
"main purpose" doctrine is applicable to this state; therefore, an
oral promise to pay the debt of another can be enforceable, despite the statute
of frauds, when the promisor has in effect made the debt his own and has assumed
primary responsibility. Gulf Liquid Fertilizer Co. v. Titus, 354 S.W.2d
378, 383 (Tex. 1962). The supreme court determined that whether an oral promise
to pay the debt of another is without the statute of frauds and enforceable
turns upon two or more of the following inquiries: (1) Did the promisor intend
to create primary responsibility in himself to pay the debt, or did he merely
intend to be a surety? (2) Was there consideration for the promise? (3) Is the
consideration given for the promise the sort of consideration which the courts
say is necessary to take the promise out of the statute of frauds? Id.
This rule places the promise
outside the statute of frauds, and therefore makes it enforceable, if the
consideration given for the promise is primarily for the promisor's own use and
benefit. Id. Although the supreme court did not determine whether all
three elements must be present at the same time, it did hold that whatever test
is used, the promise must be supported by consideration. Id. at 387.
A. Did the Melvins
intend to create primary responsibility in themselves
to pay the debt, or did they merely intend to
be sureties?
Courts may determine whether the
promisor intended to create primary responsibility in himself to pay the debt or
to merely become a surety by looking at the words used to make the oral promise.
Id. at 383. If the words are so clear as to be unsusceptible of any
other intent than to be, or not to be, only a surety, then the court may answer
the question as a matter of law. Id. However, the court may find that
the words are not clear and that the question of intent is one for the finder of
fact, taking into account all the facts and circumstances of the case, including
the words of the promisor. Id.
Here, the trial court considered
all the facts and circumstances, including the Melvins' statements implying that
they would pay Bearden, and found that the Melvins did not promise to pay
Bearden. See id. at 385 (stating that if the findings of fact are
susceptible to different constructions, they will be construed, if possible, to
be in harmony with the judgment and to support it). Catherine signed the
original contract, and she is the party responsible for payment. The Melvins did
not sign the contract and did not agree to guarantee in writing payment.
Furthermore, the contract says on it face it may not be modified except through
a signed writing, and there is no evidence of a modification. The only payment
Bearden ever received was the $4,000 check paid by the McCurley law firm, and
all bills were submitted to McCurley. It was not until late July that Bearden
finally sent a bill to the Melvins.
Although the phone conversation
Bearden recorded with Mrs. Melvin may have implied to Bearden that she was going
to pay the bills, the trial court also heard evidence that while the Melvins
were the source of Catherine's money, ultimately Catherine was responsible for
payment. Even though Mrs. Melvin failed to tell Bearden of this loan arrangement
with Catherine, Mrs. Melvin assumed that McCurley had informed Bearden of the
arrangement.
Bearden further argues that the
telephone conversation is evidence of a prior agreement, rather than the
formation of a new agreement. However, after considering all the evidence, the
trial court's finding that the Melvins made no promise to Bearden and therefore
were not primarily responsible for the debt is not so contrary to the great
weight and preponderance of the evidence as to be manifestly unjust.
B. Was there
consideration for the promise?
Sufficient consideration is
necessary to create a binding contract. Id. at 383. The Melvins were
not parties to the contract, and the trial court found there was no independent
consideration to support a promise of primary obligation. Although
counter-surveillance services occurred at the Melvins' residence in accordance
with Bearden's agreement with Catherine, these services were incidental to the
Melvins since Catherine was living with the Melvins at the time. These services
failed to provide the basis for independent consideration to support an alleged
promise to primary obligors. Moreover, Mrs. Melvin testified that she did not
want Bearden's investigators and security force present at her home all the
time. The services provided were for Catherine, who happened to live in the
Melvins' home; therefore, the services were incidental to the Melvins. Thus,
there was no independent consideration to support the alleged oral agreement.
(3)
Because the Melvins' oral promise does not meet the required tests
under Gulf Liquid Fertilizer Co., the trial court's
finding that the Melvins made no promise to Bearden is not so contrary to the
great weight and preponderance of the evidence as to be manifestly unjust. See
Gulf Liquid Fertilizer Co., 354 S.W.2d at 383. The Melvins essentially
agreed to an oral guarantee for the debt of another, which must be in writing
and signed by the party to be charged in order to be enforceable. See
Tex. Bus. & Com. Code Ann. § 26.01(b)(2) (Vernon 2002). Therefore,
Bearden's first and third issues are overruled.
V. Quasi-Contractual Claims
A. Quantum Meruit
Because we hold that the Melvins did not have a binding contract with
Bearden, we will address Bearden's second issue on its quasi-contractual claims.
Bearden first claims that the trial court erred in finding against its quantum
meruit claim. Specifically, it argues that Findings of Fact Nos. 20 (there was
no independent consideration to support a promise of primary obligation by the
Melvins), 23 (there were no valuable services or materials furnished by Bearden
to the Melvins as opposed to their daughter Catherine), 24 (no valuable services
or materials were created by Bearden that were accepted, used, or enjoyed by the
Melvins as opposed to Catherine), and 25 (the Melvins were not under any
reasonable notice that Bearden was expecting payment from them until after it
had provided services to Catherine) are against the great weight and
preponderance of the evidence. Bearden also asserts that the trial court erred
in concluding that its quantum meruit claim fails as a matter of law. The
Melvins respond that the evidence supports the trial court's findings of fact
and conclusion of law.
After considering all the evidence, we conclude that the trial court's
findings are not so contrary to the great weight and preponderance of the
evidence as to be manifestly unjust. Furthermore, we hold the trial court made a
proper conclusion of law.
Quantum meruit is an equitable theory of recovery that is based on an
implied agreement to pay for benefits received. Vortt Exp. Co.
v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). To recover under
the doctrine of quantum meruit, a plaintiff must establish that (1) valuable
services and/or materials were furnished, (2) for the party sought to be
charged, (3) which were accepted by the party sought to be charged, and (4)
under such circumstances as reasonably notified the recipient that the
plaintiff, in performing, expected to be paid by the recipient. Heldenfels
Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).
In Bashara v. Baptist Memorial Hospital System,
the supreme court held that quantum meruit is not established simply because one
person's efforts may have benefitted another. 685 S.W.2d 307, 310 (Tex. 1985).
The efforts must have been undertaken for the person
sought to be charged. Id. It is well settled that "[n]o
one can legally claim compensation for . . . incidental benefits and advantages
to one, flowing to him on account of services rendered to another." Id.
(quoting Landman v. State, 97 S.W.2d 264, 265 (Tex. Civ.
App.--El Paso 1936, writ ref'd)). The supreme court held that although the
hospital may have received benefits traceable to its attorney's efforts, the
benefits were only incidental and created no claim for compensation. Id.
Similar to Bashara, the Melvins may have received
some benefit from Bearden's investigative work; however, it was only incidental
to Catherine's benefit. Bearden did not undertake the investigation for
the Melvins; therefore, they cannot be the persons sought to be charged under
quantum meruit.
As mentioned previously, Catherine contacted the agency and signed the
contract for its services. Bearden continued to send billings to the McCurley
law firm until late July of 1997, when it then finally decided to send the
information to the Melvins. Furthermore, even though Bearden recorded a phone
conversation in which Mrs. Melvin implied that she would make sure Bearden
received payment, this conversation occurred months after the services were
performed. Again, this establishes that the agency's efforts were not for
the person sought to be charged.
There is some evidence that Mr. Melvin approached the agency about
testing his grandson's diaper for drugs because Mr. Melvin feared his grandson
may have "gotten into something." Mr. Melvin testified, however, that
he did not ask Bearden to do any tests, and the agency must have learned about
the possible drug problem from McCurley. There is also evidence that Mrs. Melvin
may have directed much of the investigation because she compiled a detailed list
of questions that needed to be answered concerning Catherine's ex-husband. She,
however, testified that the list was comprised of many people's questions and
that Catherine's attorney asked her to organize and write all of them down. She
claims no active involvement in the case. As mentioned previously, although the
Melvins received the benefit of having their home monitored by security, Mrs.
Melvin testified that she did not like all of the security and it was more for
the safety of her daughter who happened to live with them. Any benefits the
Melvins received was merely incidental to those received by Catherine.
After reviewing the evidence for and against the trial court's Finding
of Fact No. 23 (there were no valuable services or materials furnished by
Bearden to the Melvins as opposed to Catherine), we conclude that the trial
court's finding is not so against the great weight and preponderance of the
evidence as to be manifestly unjust. Therefore, Bearden did not establish that
its efforts were undertaken "for the person sought to be charged." See
id. Because Bearden has failed to establish a necessary element to recover
under the theory of quantum meruit, we need not address Findings of Fact Nos.
20, 24, and 25. See Tex. R. App. P. 47.1. Thus, Bearden's
claim for quantum meruit fails as a matter of law. We, therefore, overrule
Bearden's quantum meruit issue.
B. Promissory Estoppel
Bearden contends that the elements of promissory estoppel are
established; therefore, the trial court erred in finding that (1) the Melvins
did not promise to pay, (2) the agency did not rely on information from the
Melvins, and (3) the agency did not suffer any damage in reliance. It further
alleges that the trial court erred in concluding that its claim for promissory
estoppel fails as a matter of law. The Melvins respond that there was more than
some evidence to support the trial court's findings that one or more essential
elements of the claim were not established.
The doctrine of promissory estoppel may be used as an alternative means
of recovery for a breach of contract claim. Wheeler v. White,
398 S.W.2d 93, 96 (Tex. 1965). The doctrine is more commonly used, as it is
here, counter-defensively by a plaintiff faced with the statute of frauds
defense. "Moore" Burger, Inc. v. Phillips Petroleum,
Co., 492 S.W.2d 934, 936-37 (Tex. 1972); Sonnichsen v.
Baylor Univ., 47 S.W.3d 122, 125 (Tex. App.--Waco 2001, no pet.). The
elements of promissory estoppel are (1) a promise, (2) foreseeability of
reliance thereon by the promisor, and (3) substantial reliance by the promisee
to its detriment. English v. Fischer, 660 S.W.2d 521, 524
(Tex. 1983).
In "Moore" Burger, the supreme court
discussed and narrowed an exception to promissory estoppel. The supreme court
stated, "Respondents read the Court's opinion to make any promise
enforceable, though within the proscription of the statute of frauds, if
foreseeable action or forbearance by the promisee meets the requirements of
Section 90 of the Restatement of Contracts . . . . This is not the
holding." "Moore" Burger, Inc., 492 S.W.2d
at 940 (op. on reh'g). When promissory estoppel is raised to bar the application
of the statute of frauds, there is an additional requirement that the promisor
promised to sign a written document complying with the statute of frauds. Nagle
v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982); see also Ford
v. City State Bank, 44 S.W.3d 121, 139 (Tex. App.--Corpus Christi 2001, no
pet.).
Although Bearden contends that the Melvins were not acting as
guarantors of Catherine's debt so the statute of frauds is inapplicable, we held
that the statute of frauds does apply. Thus, after applying the requirements of
promissory estoppel, we hold that the doctrine does not apply to the facts of
this case.
In order to invoke this doctrine, Bearden needed to prove an oral
promise to sign a written agreement that would comply with the statute of
frauds. See Nagle, 633 S.W.2d at 800; Consol.
Petroleum Indus., Inc. v. Jacobs, 648 S.W.2d 363, 367 (Tex. App.--Eastland
1983, writ ref'd n.r.e.). There is no proof in the record that the Melvins
orally promised to sign a written agreement; therefore, the trial court made a
correct finding of fact. (4) Consequently, the
doctrine of promissory estoppel is not applicable, and we need not address the
trial court's other findings of fact regarding promissory estoppel. See
Tex. R. App. P. 47.1. Thus, Bearden's promissory estoppel claim fails as a
matter of law. We, therefore, overrule Bearden's second issue concerning
quasi-contractual claims.
VI. Conclusion
Having overruled Bearden's remaining issues, we affirm the judgment of
the trial court.
 
          
           
           
           
           
           
           
    TERRIE LIVINGSTON
          
           
           
           
           
           
           
    JUSTICE 

 
PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.
CAYCE, C.J. concurs without opinion.
[DELIVERED JANUARY 30, 2003]

1. See Tex. R. App. P. 47.4.
2. Having concluded that res judicata and collateral
estoppel do not bar Bearden's claim against the Melvins, we also hold that
waiver is not applicable.
3. Because there is no consideration for the
alleged oral agreement, we need not address whether the consideration given for
the promise is the sort of consideration the courts say is necessary to take the
promise out of the statute of frauds.
4. Although three courts of appeals,
including this court, have made statements that could be construed to mean that
promissory estoppel can be raised even if the promise to sign a written
agreement was made before the agreement was reduced to writing, this does not
change the outcome under these facts. See EP
Operating Co. v. MJC Energy Co., 883 S.W.2d 263, 267 (Tex. App.--Corpus
Christi 1994, writ denied); Cobb v. W. Tex. Microwave Co.,
700 S.W.2d 615, 616 (Tex. App.--Austin 1985, writ ref'd n.r.e.); Levine
v. Loma Corp., 661 S.W.2d 779, 781 (Tex. App.--Fort Worth 1983, no writ).
There is still no evidence of any agreement to sign a written document.