BEARDEN INVESTIGATIVE V. MELVIN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-078-CV

BEARDEN INVESTIGATIVE AGENCY, INC. APPELLANT

V.

ANN MELVIN AND JOHN MELVIN APPELLEES

------------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM
 
OPINION
(footnote: 1)

------------

Appellant, Bearden Investigative Agency, Inc. (Bearden), appeals the trial court’s take-nothing judgment in Bearden’s suit against the appellees, Ann and John Melvin.  Bearden contends that (1) the Melvins promised to pay the agency; (2) Bearden is entitled to recovery based on quasi-contractual claims; (3) the statute of frauds does not apply because the Melvins were primary obligors on the debt with their daughter, Catherine; and (4) Bearden’s intervention into Catherine’s divorce proceeding does not preclude its action against the Melvins.  We affirm.

I.  Factual Background 

According to a memorandum dated April 10, 1997, Catherine MacPete contacted Bearden and stated that her attorney, Mike McCurley, referred her to the agency.  Catherine wanted Bearden to undertake a sweep for bugs and taps at the home where she lived with her parents Ann and John Melvin.  Bearden later talked with Mr. Melvin who agreed to write a $4,000 retainer check to Bearden for the sweep.  Because the McCurley law firm wanted to maintain the attorney-client privilege with all information, McCurley notified Bearden that he wanted to write the $4,000 check.  Mr. Melvin’s check was either returned or subsequently destroyed.

Catherine and McCurley entered a contract on April 11, 1997 with Bearden that states on its face that client (McCurley) and client’s client (Catherine) are the responsible parties for paying for Bearden’s services.  It further states that the agreement may be modified or amended only in writing, duly executed by both the client and the investigative agency, and shall remain in full force and effect until amended or rejected in writing by one of the parties.  Mr. and Mrs. Melvin were not parties to the contract, did not enter a separate written agreement with Bearden, and never received a rate schedule or any summary of the services supplied by Bearden.  Bearden sent the billing statements to the McCurley law firm because there was an understanding that Bearden’s bills would be added to the attorney’s fees statement.  Bearden did not send an invoice or statement recapping past invoices to the Melvins until July 25, 1997. 

On May 28, 1997 Bearden recorded a telephone conversation with Mrs. Melvin in which she implied that she would be responsible for providing payment to Bearden.  The Melvins, however, were providing loans to Catherine who in turn paid off her bills as necessary, including paying McCurley for legal services.  Mrs. Melvin assumed that McCurley had explained the payment situation to Bearden; therefore, she never discussed the loan payment situation with the agency.  After the initial $4,000 payment for the sweep of the home, Bearden never received any more compensation for its services, which totaled $34,199.72. 

Bearden later intervened in Catherine’s divorce proceeding and settled with her through the entry of an agreed final judgment for $20,000 on January 12, 2000.  Meanwhile, Bearden brought the present action against the Melvins in February of 1998.  On December 6, 2001, the trial court entered a take-nothing judgment against Bearden.  The court signed the Melvins’ proposed findings of fact and conclusions of law, which included findings that the Melvins had not promised to pay Bearden, that there had not been any consideration to support any promise, that no services had been provided by Bearden to the Melvins, that no services had been accepted, used, or enjoyed by the Melvins, and that the Melvins had no notice that Bearden was expecting to be paid by them.  The trial court also concluded that Bearden’s claim was barred by the statute of frauds and that its suit and judgment against Catherine operated to waive and estop any claim against the Melvins.  This appeal followed. 

II.  Standard of Review 

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer.  
Ortiz v. Jones,
 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel,
 881 S.W.2d 295, 297 (Tex. 1994).

In reviewing an issue asserting that an answer is “against the great weight and preponderance” of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence.  
Ames v. Ames
, 776 S.W.2d 154, 158-59 (Tex. 1989), 
cert. denied
, 494 U.S. 1080 (1990); 
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex. 1986).  So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained, regardless of whether there is some evidence to support it.  
Watson v. Prewitt
, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); 
In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 

Conclusions of law, including implied conclusions of law, are always reviewable. 
See
 W. Wendell Hall, 
Standards of Review in Texas
 , 29
 St. Mary’s  L.J.
 351, 501 (1998). We review a trial court's actual or implied conclusions of law de novo as legal questions. 
 See, e.g.
, 
Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 928 (Tex. 1998) (applying de novo standard to question of subject matter jurisdiction)
, 
cert. denied
, 526 U.S. 1144 (1999); 
Michel v. Rocket Eng’g Corp., 
45 S.W.3d 658, 667 (Tex. App.—Fort Worth 2001, no pet.) (holding “[w]e review all questions of law de novo”).  A trial court's conclusion of law will not be reversed unless it is erroneous as a matter of law. 
Arch Petroleum, Inc. v. Sharp
, 958 S.W.2d 475, 477 (Tex. App.—Austin 1997, no pet.). Conclusions of law are not erroneous and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. 
Copeland v. Alsobrook
, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied).

III.  Does the agency’s agreed final judgment against 

Catherine operate as res judicata, collateral estoppel, or otherwise bar 

its claim against the Melvins?

Bearden contends that Conclusion of Law No. 4, that Bearden’s  judgment against Catherine operated to waive and estop it from asserting claims against the Melvins, is without any basis or support.  The Melvins respond that the judgment against Catherine established that she is the primary obligor on the debt; therefore, Bearden has waived its argument that the Melvins are primary obligors and is estopped from relitigating the issue in this lawsuit.

Res judicata precludes relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and that could have been litigated in the prior action.  
Barr v. Resolution Trust Corp
., 837 S.W.2d 627, 628 (Tex. 1992).  It requires proof of the following elements:  (1) a prior final judgment on the merits by a court of competent jurisdiction;  (2) identity of parties or those in privity with them;  and (3) a second action based on the same claims as were raised or could have been raised in the first action. 
 
Amstadt v. U.S. Brass Corp
.
,
 
919 S.W.2d 644, 652 (Tex. 1996).

The Melvins argue that the settlement agreement and agreed final judgment against Catherine bar any claims that Bearden may have against them.
  Bearden alleges that the agreement and judgment only establishes Catherine’s liability, but does not affect the Melvins’ liability as joint obligors.   The agreed final judgment stipulated that judgment should be entered in favor of Bearden against Catherine as a full resolution of all claims between the two parties in the matter.  The judgment failed to indicate that Catherine was the sole or primary obligor on Bearden’s claim.  Thus, the first required element of res judicata, a prior final judgment on the merits by a court of competent jurisdiction, fails since Bearden never had any prior claim against the Melvins reduced to judgment.  Bearden’s only prior judgment was against Catherine.  Therefore, Bearden’s suit is not barred by res judicata.

The doctrine of collateral estoppel is used to prevent a party from relitigating an issue that is “previously litigated and lost.”  
Quinney Elec., Inc. v. Kondos Entm't, Inc
. 988 S.W.2d 212, 213 (Tex. 1999).  To invoke collateral estoppel successfully, a party must establish the following elements:  (1) the facts sought to be litigated in the second action were fairly and fully litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.  
Mann v. Old Republic Nat’l Title Ins. Co.
, 975 S.W.2d 347, 350 (Tex. App.—Houston [14
th
 Dist.] 1998, no pet.)
.  Because the agreed final judgment only concerned Catherine, the facts sought to be litigated in Bearden’s action against the Melvins were not fairly and fully litigated in the action against Catherine.  Thus, the first element of collateral estoppel fails.  Furthermore, the parties were not cast as adversaries in the first action because Bearden intervened in Catherine’s divorce proceeding, a proceeding to which the Melvins were not parties. Because the elements of collateral estoppel are not met, Bearden’s claim is not barred by collateral estoppel.
(footnote: 2)
 Having determined that Bearden’s claim was not precluded by res judicata or collateral estoppel, the trial court’s Conclusion of Law No. 4 is incorrect.  We sustain Bearden’s fourth issue. 

IV.  Did the Melvins obligate themselves to pay Bearden?

In its first issue, Bearden contends that the Melvins promised to pay Bearden and that simply because one obligor executes a writing that is not signed by the other obligors, this does not affect the other obligors’ liability.  Bearden argues that there is no evidence to support a  finding that the Melvins did not promise to pay, and/or it is against the great weight and preponderance of the evidence. In its third issue, Bearden argues that the statute of frauds does not apply because the Melvins are primary obligors on the debt.  The Melvins respond that the evidence supports the trial court’s finding, and Bearden’s action is barred by the statute of frauds. 

According to the “main purpose” doctrine, we conclude that Bearden’s  claim is barred by the statute of frauds as an unenforceable oral agreement, and the trial court’s finding is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.  

The supreme court has held that the “main purpose” doctrine is applicable to this state; therefore, an oral promise to pay the debt of another can be enforceable, despite the statute of frauds, when the promisor has in effect made the debt his own and has assumed primary responsibility.  
Gulf Liquid Fertilizer Co. v. Titus
, 354 S.W.2d 378, 383 (Tex. 1962).  The supreme court determined that whether an oral promise to pay the debt of another is without the statute of frauds and enforceable turns upon two or more of the following inquiries: (1) Did the promisor intend to create primary responsibility in himself to pay the debt, or did he merely intend to be a surety? (2) Was there consideration for the promise? (3) Is the consideration given for the promise the sort of consideration which the courts say is necessary to take the promise out of the statute of frauds?  
Id
.  

This rule places the promise outside the statute of frauds, and therefore makes it enforceable, if the consideration given for the promise is primarily for the promisor’s own use and benefit.  
Id
.  Although the supreme court did not determine whether all three elements must be present at the same time, it did hold that whatever test is used, the promise must be supported by consideration.  
Id
. at 387.

A.
  
Did the Melvins intend to create primary responsibility in themselves 

to pay the debt, or did they merely intend to be sureties?

Courts may determine whether the promisor intended to create primary responsibility in himself to pay the debt or to merely become a surety by looking at the words used to make the oral promise. 
 Id
. at 383.  If the words are so clear as to be unsusceptible of any other intent than to be, or not to be, only a surety, then the court may answer the question as a matter of law.  
Id
.  However, the court may find that the words are not clear and that the question of intent is one for the finder of fact, taking into account all the facts and circumstances of the case, including the words of the promisor.  
Id
. 

Here, the trial court considered all the facts and circumstances, including the Melvins’ statements implying that they would pay Bearden, and found that the Melvins did not promise to pay Bearden.  
See id
. at 385 (stating that if the findings of fact are susceptible to different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it).  Catherine signed the original contract, and she is the party responsible for payment.  The Melvins did not sign the contract and did not agree to guarantee in writing payment.  Furthermore, the contract says on it face it may not be modified except through a signed writing, and there is no evidence of a modification.  The only payment Bearden ever received was the $4,000 check paid by the McCurley law firm, and all bills were submitted to McCurley.  It was not until late July that Bearden finally sent a bill to the Melvins. 

Although the phone conversation Bearden recorded with Mrs. Melvin may have implied to Bearden that she was going to pay the bills, the trial court also heard evidence that while the Melvins were the source of Catherine’s money, ultimately Catherine was responsible for payment.  Even though Mrs. Melvin failed to tell Bearden of this loan arrangement with Catherine, Mrs. Melvin assumed that McCurley had informed Bearden of the arrangement.  

Bearden further argues that the telephone conversation is evidence of a prior agreement, rather than the formation of a new agreement.  However, after considering all the evidence, the trial court’s finding that the Melvins made no promise to Bearden and therefore were not primarily responsible for the debt is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

B.  Was there consideration for the promise?

Sufficient consideration is necessary to create a binding contract. 
 Id
. at 383.  The Melvins were not parties to the contract, and the trial court found there was no independent consideration to support a promise of primary obligation.  Although counter-surveillance services occurred at the Melvins’ residence in accordance with Bearden’s agreement with Catherine, these services were incidental to the Melvins since Catherine was living with the Melvins at the time.  These services failed to provide the basis for independent consideration to support an alleged promise to primary obligors.  Moreover, Mrs. Melvin testified that she did not want Bearden’s investigators and security force present at her home all the time.  The services provided were for Catherine, who happened to live in the Melvins’ home; therefore, the services were incidental to the Melvins.  Thus, there was no independent consideration to support the alleged oral agreement.
(footnote: 3) 

Because the Melvins’ oral promise does not meet the required tests under 
Gulf Liquid Fertilizer Co
., the trial court’s finding that the Melvins made no promise to Bearden is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.  
See Gulf Liquid Fertilizer Co.
, 354 S.W.2d at 383.  The Melvins essentially agreed to an oral guarantee for the debt of another, which must be in writing and signed by the party to be charged in order to be enforceable.  
See
 
Tex. Bus. & Com. Code Ann
. § 26.01(b)(2) (Vernon 2002).  Therefore, Bearden’s first and third issues are overruled. 

V.  Quasi-Contractual Claims

A.  Quantum Meruit

Because we hold that the Melvins did not have a binding contract with Bearden, we will address Bearden’s second issue on its quasi-contractual claims.  Bearden first claims that the trial court erred in finding against its quantum meruit claim.  Specifically, it argues that Findings of Fact Nos. 20 (there was no independent consideration to support a promise of primary obligation by the Melvins), 23 (there were no valuable services or materials furnished by Bearden to the Melvins as opposed to their daughter Catherine), 24 (no valuable services or materials were created by Bearden that were accepted, used, or enjoyed by the Melvins as opposed to Catherine), and 25 (the Melvins were not under any reasonable notice that Bearden was expecting payment from them until after it had provided services to Catherine) are against the great weight and preponderance of the evidence.  Bearden also asserts that the trial court erred in concluding that its quantum meruit claim fails as a matter of law.  The Melvins respond that the evidence supports the trial court’s findings of fact and conclusion of law.

After considering all the evidence, we conclude that the trial court’s findings are not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.  Furthermore, we hold the trial court made a proper conclusion of law. 

Quantum meruit is an equitable theory of recovery that is based on an implied agreement to pay for benefits received.
  Vortt Exp. Co. v. Chevron U.S.A., Inc.
, 787 S.W.2d 942, 944 (Tex. 1990).  To recover under the doctrine of quantum meruit, a plaintiff must establish that (1) valuable services and/or materials were furnished, (2) for the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient.  
Heldenfels Bros., Inc. v. City of Corpus Christi
, 832 S.W.2d 39, 41 (Tex. 1992).

In 
Bashara v. Baptist Memorial Hospital System
, the supreme court held that quantum meruit is not established simply because one person’s efforts may have benefitted another. 
 685 S.W.2d 307, 310 (Tex. 1985).  The efforts must have been undertaken 
for
 the person sought to be charged.  
Id
.  It is well settled that “[n]o one can legally claim compensation for . . . incidental benefits and advantages to one, flowing to him on account of services rendered to another.”  
Id
. (quoting 
Landman v. State
, 97 S.W.2d 264, 265 (Tex. Civ. App.—El Paso 1936, writ ref’d)).  The supreme court held that although the hospital may have received benefits traceable to its attorney’s efforts, the benefits were only incidental and created no claim for compensation. 
 Id
.

Similar to 
Bashara
, the Melvins may have received some benefit from Bearden’s investigative work; however, it was only incidental to Catherine’s benefit.  Bearden did not undertake the investigation
 for
 the Melvins; therefore, they cannot be the persons sought to be charged under quantum meruit.

As mentioned previously, Catherine contacted the agency and signed the contract for its services.  Bearden continued to send billings to the McCurley law firm until late July of 1997, when it then finally decided to send the information to the Melvins.  Furthermore, even though Bearden recorded a phone conversation in which Mrs. Melvin implied that she would make sure Bearden received payment, this conversation occurred months after the services were performed.  Again, this establishes that the agency’s efforts were not 
for
 the person sought to be charged.  

There is some evidence that Mr. Melvin approached the agency about testing his grandson’s diaper for drugs  because Mr. Melvin feared his grandson may have “gotten into something.”  Mr. Melvin testified, however, that he did not ask Bearden to do any tests, and the agency must have learned about the possible drug problem from McCurley.  There is also evidence that Mrs. Melvin may have directed much of the investigation because she compiled a detailed list of questions that needed to be answered concerning Catherine’s ex-husband.  She, however, testified that the list was comprised of many people’s questions and that Catherine’s attorney asked her to organize and write all of them down.  She claims no active involvement in the case.  As mentioned previously, although the Melvins received the benefit of having their home monitored by security, Mrs. Melvin testified that she did not like all of the security and it was more for the safety of her daughter who happened to live with them.  Any benefits the Melvins received was merely incidental to those received by Catherine.  

After reviewing the evidence for and against the trial court’s Finding of Fact No. 23 (there were no valuable services or materials furnished by Bearden to the Melvins as opposed to Catherine), we conclude that the trial court’s finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust.  Therefore, Bearden did not establish that its efforts were undertaken “for the person sought to be charged.”  
See id.  
Because Bearden has failed to establish a necessary element to recover under the theory of quantum meruit, we need not address Findings of Fact Nos. 20, 24, and 25.  
See
 
Tex. R. App. P
. 47.1.  Thus, Bearden’s claim for quantum meruit fails as a matter of law.  We, therefore, overrule Bearden’s quantum meruit issue.

B.  Promissory Estoppel

Bearden contends that the elements of promissory estoppel are established; therefore, the trial court erred in finding that (1) the Melvins did not promise to pay, (2) the agency did not rely on information from the Melvins, and (3) the agency did not suffer any damage in reliance.  It further alleges that the trial court erred in concluding that its claim for promissory estoppel fails as a matter of law.  The Melvins respond that there was more than some evidence to support the trial court’s findings that one or more essential elements of the claim were not established.

The doctrine of promissory estoppel may be used as an alternative means of recovery for a breach of contract claim.  
Wheeler v. White
, 398 S.W.2d 93, 96 (Tex. 1965).  The doctrine is more commonly used, as it is here, counter-defensively by a plaintiff faced with the statute of frauds defense.  “
Moore” Burger, Inc. v. Phillips Petroleum, Co.
, 492 S.W.2d 934, 936-37 (Tex. 1972); 
Sonnichsen v. Baylor Univ.
, 47 S.W.3d 122, 125 (Tex. App.—Waco 2001, no pet.).  The elements of promissory estoppel are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to its detriment.  
English v. Fischer
, 660 S.W.2d 521, 524 (Tex. 1983).

In 
“Moore” Burger
, the supreme court discussed and narrowed an exception to promissory estoppel. 
 The supreme court stated, “Respondents read the Court’s opinion to make any promise enforceable, though within the proscription of the statute of frauds, if foreseeable action or forbearance by the promisee meets the requirements of Section 90 of the Restatement of Contracts . . . .  This is not the holding.”  
“Moore” Burger
, 
Inc
., 492 S.W.2d at 940 (op. on reh'g).  When promissory estoppel is raised to bar the application of the statute of frauds, there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds.  
Nagle v. Nagle
, 633 S.W.2d 796, 800 (Tex. 1982); 
see also Ford v. City State Bank
, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.
).

Although Bearden contends that the Melvins were not acting as guarantors of Catherine’s debt so the statute of frauds is inapplicable, we held that the statute of frauds does apply.  Thus, after applying the requirements of promissory estoppel, we hold that the doctrine does not apply to the facts of this case.  

In order to invoke this doctrine, Bearden needed to prove an oral promise to sign a written agreement that would comply with the statute of frauds.  
See Nagle
, 633 S.W.2d at 800; 
Consol. Petroleum Indus., Inc. v. Jacobs
, 648 S.W.2d 363, 367 (Tex. App.—Eastland 1983, writ ref’d n.r.e.).  There is no proof in the record that the Melvins orally promised to sign a written agreement; therefore, the trial court made a correct finding of fact.
(footnote: 4)  Consequently, the doctrine of promissory estoppel is not applicable, and we need not address the trial court’s other findings of fact regarding promissory estoppel.  
See
 
Tex. R. App. P
. 47.1.  Thus, Bearden’s promissory estoppel claim fails as a matter of law.
 
 We, therefore, overrule Bearden’s second issue concerning quasi-contractual claims.

VI.  Conclusion

Having overruled Bearden’s remaining issues, we affirm the judgment of the trial court. 

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

CAYCE, C.J. concurs without opinion.

[DELIVERED JANUARY 30, 2003]

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Having concluded that res judicata and collateral estoppel do not bar Bearden’s claim against the Melvins, we also hold that waiver is not applicable. 

3:
Because there is no consideration for the alleged oral agreement, we need not address whether the consideration given for the promise is the sort of consideration the courts say is necessary to take the promise out of the statute of frauds.

4:
Although three courts of appeals, including this court, have made statements that could be construed to mean that promissory estoppel can be raised even if the promise to sign a written agreement was made before the agreement was reduced to writing, this does not change the outcome under these facts.  
See
 
EP Operating Co. v. MJC Energy Co.
, 883 S.W.2d 263, 267 (Tex. App.—Corpus Christi 1994, writ denied); 
Cobb v. W. Tex. Microwave Co.
, 700 S.W.2d 615, 616 (Tex. App.—Austin 1985, writ ref’d n.r.e.)
; 
Levine v. Loma Corp
., 661 S.W.2d 779, 781 (Tex. App.—Fort Worth 1983, no writ).  There is still no evidence of any agreement to sign a written document.