Harry M. STANFIELD, Petitioner,

v.

Jim O'BOYLE, Respondent.

No. B–2146.

Supreme Court of Texas.

Jan. 20, 1971.

Akin, Steinberg & Stanford, Paul H. Stanford, Alto B. Cervin, Dallas, for petitioner.

Rosenfield, Berwald, Mittenthal & Koppman, Max R. Rosenfield and Elihu E. Berwald, Dallas, for respondent.

CALVERT, Chief Justice.

This suit by petitioner Stanfield, plaintiff, against respondent O'Boyle, defendant, grew out of a transaction between the parties which is described in an opinion in an earlier appeal reported as Stanfield v. O'Boyle, 421 S.W.2d 745 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). The following factual statement is adopted from that opinion:

"On August 16, 1957 Jim O'Boyle pledged to Harry M. Stanfield certain shares of stock in consideration of a loan in the sum of $50,000. On January 25, 1958, Stanfield released the stock to O'Boyle in consideration of the execution by O'Boyle of an agreement to substitute certain real estate for the shares of stock. Stanfield thereafter, on January 23, 1962, brought suit against O'Boyle alleging breach of the agreement and praying that O'Boyle execute a deed to the real estate in question or, in the alternative, for judgment in the amount of $52,050. Thereafter O'Boyle was adjudged to be a bankrupt and was discharged on September 1, 1964 by the bankruptcy court. In his schedule of obligations in the bankruptcy court O'Boyle listed the obligation owed to Stanfield. On November 16, 1966, Stanfield filed his first amended original petition in which he alleged that O'Boyle, in order

to induce Stanfield to release the shares of stock, made false and fraudulent representations. Stanfield also countered O'Boyle's discharge in bankruptcy contention by contending that since the property in question had been obtained by O'Boyle due to false pretenses or false representations the indebtedness was not discharged under the Bankruptcy Law of the United States. O'Boyle answered this amended petition by pleading the statute of limitations and further pleading that the indebtedness had been discharged in bankruptcy."

The trial court originally sustained a motion by O'Boyle for summary judgment on the ground that Stanfield's cause of action was barred by a statute of limitation, and rendered judgment that Stanfield take nothing by his suit. The Dallas Court of Civil Appeals reversed and remanded, holding expressly that the cause of action was not barred by the statute of limitation. Stanfield v. O'Boyle, supra. Following remand of the cause, the trial court in a nonjury trial rendered judgment that Stanfield recover of O'Boyle the sum of $50,000 with interest from the date of the judgment at 6%, but denied a recovery of pre-judgment interest. The Waco Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for retrial. 452 S.W.2d 574. We reverse the judgment of the court of civil appeals and remand the case to that court.

The trial court filed findings of fact in support of its judgment, including express findings that O'Boyle promised to convey to Stanfield real estate of a value of $50,000 if Stanfield would release the corporate stock held as security; that this was a "false promise made as an inducement to plaintiff to release" the stock as security; that plaintiff had relied on the promise in releasing the stock; that O'Boyle did not then own $50,000 worth of realty and did not intend to convey it as agreed; and that plaintiff did not have actual or constructive

knowledge "of the fraud committed by defendant" until within two years of the filing of the suit. The court concluded that: (1) Stanfield's claim was based upon O'Boyle's obtaining property by false pretenses and representations and was not discharged in bankruptcy; (2) the cause of action was not barred by any statute of limitation; (3) O'Boyle's conduct amounted to actionable fraud in violation of Article 4004, Vernon's Tex.Civ.Stats.; (4) "[t]he measure of damages suffered by the plaintiff as a result of the fraud committed by the Defendant is $50,000.00"; and (5) the plaintiff was not entitled to pre-judgment interest.

The court of civil appeals expressly held that Article 4004 has no application to the facts of this case, and we agree with that holding. The statute deals with "[a]ctionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies * * *", and provides that such fraud may be predicated upon a "false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract"; but the rule of damages provided for in the statute is "the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, *and the actual value of the property in the condition it is delivered at the time of the contract.*"[1] Two courts of civil appeals have held, and we believe correctly, that Article 4004 "is applicable only when a conveyance of the property has been made, and not where there is merely a contract to convey." Rawdon v. Garvie, 227 S.W.2d 261, 265 (Tex. Civ.App.—Dallas 1950, no writ); Campbell v. Wilson, 238 S.W. 318 (Tex.Civ.App. —Fort Worth 1921, no writ). Respondent cites Hoad v. Winchester, 279 S.W. 875 (Tex.Civ.App.—San Antonio 1926, writ dism'd) for a contrary holding. Article

1. Emphasis ours.

4004 damages were not involved in the cited case.

▇ But the fact that Article 4004 is inapplicable to the facts of this case, thus preventing a recovery of the measure of damages there provided, does not defeat Stanfield's right to recover damages for fraud as at common law. See El Paso Development Company v. Ravel, 339 S.W.2d 360 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.), where a number of cases so holding are reviewed. The principal question before us, therefore, is whether the trial court's findings of fraud are supported by evidence of probative force; and, more particularly, whether there is evidence of probative force in the record supporting the trial court's finding that O'Boyle did not intend to convey the real estate at the time he promised to do so. The court of civil appeals was of the opinion that, at best, the evidence supports a finding of failure to perform a promise, which finding, standing alone, does not raise an issue of lack of intention to perform when the promise was made. We think there is other evidence of lack of intent to perform.

Other evidence which furnishes support for the trial court's finding is found in O'Boyle's denial that he made the promise to convey, Stone v. Williams, 358 S.W.2d 151, 155 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.), and testimony of the witness Ivey, a long-time acquaintance and fellow stockholder, relating a conversation with O'Boyle which occurred within two or three days after an oral agreement between Stanfield and O'Boyle for substitution of real estate for the stock and some ten days before the agreement was reduced to writing. Ivey's testimony relating questions asked by him and answers made by O'Boyle is as follows:

"Q. * * * was anything said at this meeting regarding Harry Stanfield?

A. Yes; I asked him, Jim, if he was going to pledge—if he was going to give Harry $50,000.00 worth of real estate for his pledge at that time.

Q. All right; did Mr. O'Boyle say anything to you then?

A. He cocked his head back and sort of laughed and said 'Do you think I am crazy?' "

" * * *."

"Q. Did he say anything further about the $50,000.00 worth of real property?

A. Nothing other than he wasn't about to give Mr. Stanfield any real property."

▇ We are satisfied that the trial court's finding that O'Boyle did not intend to convey real estate at the time he made the promise is supported by evidence of probative force. Actionable fraud can be based upon a promise of future action with a present intention not to perform. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472 (1892).

The respondent also had before the court of civil appeals points of error challenging the factual sufficiency of the evidence to support the trial court's finding that at the time O'Boyle made the promise he did not intend to perform. Since our decision in Barker v. Coastal Builders, 153 Tex. 540, 271 S.W.2d 798 (1954), it has been our practice in such situations to assume that, having sustained the "no evidence" point, the court of civil appeals would also have sustained the insufficient evidence point if it had reached it, and upon that assumption we have remanded the cause to the trial court rather than to the court of civil appeals. Upon further consideration of the problem, we have concluded that the practice does not further the administration of justice and should be abandoned; that the ends of justice will be better served in such

situations by remanding the cause to the court of civil appeals when it has not ruled on the insufficient evidence point, expressly or impliedly, thus giving that court an opportunity to reconsider the state of the evidence as exemplified in our opinion, and an opportunity to exercise the fact finding jurisdiction conferred upon it by Article V, Section 6, Constitution of Texas.

Having held that the trial court's judgment, based as it was upon fraud, was not supported by evidence of probative force, the court of civil appeals would, in ordinary circumstances, have reversed the trial court's judgment and rendered judgment that the plaintiff, Stanfield, take nothing. However, the court concluded that the case had been tried on a wrong theory and that the evidence had not been fully developed and remanded the cause for a new trial. Our holdings on the principal questions in the case indicate our belief that the case was tried, at least in part, on a correct theory. In view of our holdings, the court of civil appeals may wish to give further consideration to its order of remand and to some of the other questions presented to it by respondent's points of error.

If, in light of our analysis of the evidence and its mature consideration thereof, the court of civil appeals should conclude that the evidence is factually insufficient to support the trial court's vital fact findings, it should have no hesitancy in reversing the trial court's judgment and remanding the case for retrial. What we have said on the law question of "no evidence" should be no impediment and no source of embarrassment to the court of civil appeals' own proper evaluation of the evidence on the fact questions of "insufficient evidence" inasmuch as that court and that court alone is made the final arbiter of that question.

The judgment of the court of civil appeals is reversed and the cause is remanded to that court for further consideration.

DENTON and DANIEL, JJ., not sitting.