**Frank T. NAGLE, Petitioner,**

v.

**Margie M. NAGLE, et al., Respondents.**

**No. C–606.**

Supreme Court of Texas.

June 2, 1982.

Rehearing Denied June 30, 1982.

---

Krist & Scott, Bryan W. Scott and Caren E. Walker, Houston, for petitioner.

Crain, Caton, James & Womble, Frank E. Caton and Joann Storey, Fulbright & Jaworski, Susan M. Townsend, Houston, for respondents.

GREENHILL, Chief Justice.

In this action, Margie M. Nagle (Margie) sought damages because of a failure of her former husband, Frank T. Nagle (Frank), to convey his interest in a piece of real proper-

ty. Frank's promise was oral. He relied upon the Statute of Frauds which says in substance:

A promise or agreement is not enforceable unless the promise or agreement is in writing and signed by the person to be charged. This applies to a contract for the sale of real estate.[1]

Notwithstanding the Statute of Frauds, the trial court rendered judgment for Margie. The judgment was based upon jury findings of fraud on the part of Frank. The Court of Civil Appeals affirmed. 617 S.W.2d at 811. We reverse those judgments and here render judgment for Frank upon the basis of the Statute of Frauds.

Margie also sued her lawyer, Allen C. Isbell (Isbell), for his failure to get Frank's oral promise reduced to writing. The trial court disregarded jury findings against Isbell because there was no evidence of his negligence. The judgment as to him was notwithstanding the verdict (N.O.V.). The Court of Civil Appeals did not disturb that judgment. Margie filed no motion for rehearing in the Court of Civil Appeals. The point is, therefore, not preserved in this Court.

Frank, an attorney, and Margie were divorced in 1972. Frank agreed to pay the monthly mortgage payment ($177.00) on the Nagle residence in Houston. Frank also agreed to pay Margie $560.00 a month in child support. Frank retained his one-half interest in the Nagle residence.

In May of 1976, after Frank had missed four child support payments, Margie filed a contempt motion. A hearing date was set for May 6. That morning, Margie and her attorney, Isbell, met with Frank concerning a settlement proposal Margie had made the day before. According to that proposal, Margie would forego the scheduled hearing on her motion and waive one month's child support payment. In consideration, Frank would transfer to Margie his one-half interest in the Nagle residence, pay the child support payments he had missed, and increase his future child support payments by $177.00 a month.

Frank orally agreed to Margie's proposal on the condition that he could avoid appearing before the court on Margie's contempt motion. Margie agreed to this condition, Isbell passed the scheduled hearing, and the parties apparently assumed that Frank returned to his office to draft a deed for his interest in the Nagle home. Later in the day, however, Frank told Isbell that he (Frank) would not transfer his one-half interest in the Nagle residence.

The next day, Isbell told Margie of Frank's "change of heart." Isbell expressed his opinion that a court would not enforce Frank's oral promise to convey his one-half interest in the Nagle home. Isbell offered to reschedule the hearing on Margie's contempt motion. Margie did not ask Isbell to reschedule the hearing.

A few days after the scheduled hearing, Frank paid all the child support payments he had missed. He continued to make the monthly mortgage payment on the Nagle residence. He also paid the child support payment Margie had agreed to waive. Margie accepted these payments.

Despite this, on June 30, 1976, Margie sued Frank and Isbell. She asked the court to enforce Frank's promise concerning the Nagle home. In the alternative, she asked for damages from Frank for his failure to perform that promise. Margie's petition stated that she wanted damages from Isbell only if the court denied her requested relief against Frank. In her petition, Margie also offered to return the child support payment she had agreed to waive.

The trial court submitted Margie's claims to a jury on fifteen special issues. The jury's findings in response to these issues can be summarized as follows:

1. Margie made her settlement proposal because of a "bona fide" dispute between her and Frank;

1. Vernon's Annotated Texas Business and Commerce Code, section 26.01.

2. Frank orally agreed to Margie's settlement proposal;

3. Margie performed her part of that proposal but Frank did not;

4. Frank should have expected that his oral agreement to Margie's proposal would induce her to perform her part of that proposal;

5. Such performance by Margie (and non-performance by Frank) caused Margie an "injury of substantial and definite nature . . . ;"

6. At the time he promised to convey his interest in the Nagle home, Frank intended that he would not perform that promise, and "injustice to (Margie) can only be avoided by enforcement of that promise;"

7. Isbell failed to act as a prudent attorney when he failed to get Frank's promise in writing;

8. Such failure proximately caused Margie damages;

9. The Nagle home was worth $54,500.00 on May 6, 1976.

After considering these findings, the trial court ordered Frank to pay Margie $21,-464.39, plus attorney's fees. And, as stated, the court rendered a judgment for Isbell N.O.V.

The Court of Civil Appeals affirmed. It held that Margie had pleaded and proved a cause of action against Frank for common law fraud, and that the trial court had properly measured Margie's damages, which were "the value of Frank's interest in the house and the costs of prosecuting the instant suit." 617 S.W.2d at 813. The court held, however, that Margie's promissory estoppel theory of recovery could not support the trial court's judgment.

■ The Statute of Frauds is the Legislature's directive that courts enforce promises covered by the statute only if such promises are in writing. Equity can avoid the strictures of that directive only by "some positive rule which will insure its

exercise for . . . the prevention of an actual fraud as distinguished from a mere wrong . . . so surely as to leave the statute itself, through the exactness of the exception, with some definiteness of operation." *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921).

The exception to the Statute of Frauds announced in *Hooks v. Bridgewater* was to prevent actual fraud. This Court there said that the equitable exception to the statute would be applied in the case where "the non-enforcement of the contract—or the enforcement of the statute—would, itself, plainly amount to a fraud."

The *Hooks* court then set out the rules for the exception:

By its requirement of (1) payment of the consideration, (2) adverse possession by the purchaser, and (3) his making of valuable and permanent improvements in order for the contract to be exempt from the statute, *it insures the application of the exemption only for the avoidance of actual fraud*, and secures, as it should, the full operation of the statute in all other cases. Its purpose is both to prevent the perpetration of fraud and to safeguard the titles of lands." [Emphasis ours. The numerals are supplied.]

229 S.W. at 1116–1117.

■ *Hooks* also dealt with estoppel; and where the three required elements set out in the opinion are present, "there is created an estoppel . . . ." 229 S.W. at 1117.

Following *Hooks*, this Court has held that an action for damages will not lie for the breach of a parol agreement to convey realty. *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150 (1945); *Robertson v. Melton*, 131 Tex. 325, 115 S.W.2d 624 (1938). The *Wilson* opinion reads in part:

If the contract is insufficient it not only precludes recovery for specific performance but also for damages for the breach thereof. This is true because an "action for damages for the breach of a contract is, in effect, an action for its

enforcement, and the statute, in denying an action for its enforcement likewise denies an action for damages for its breach."

188 S.W.2d at 152.

■ The Court of Civil Appeals correctly held in this case that promissory estoppel is not applicable. Assuming the *Hooks* case is not dispositive, this Court's opinion in *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.1973) is. According to our holding there, courts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid injustice. *"Moore" Burger*, 492 S.W.2d at 934.

This Court's original opinion in *"Moore Burger"* was considered to have been too broadly written. On rehearing, the Court wrote to narrow the promissory estoppel exception to cases where the promise was "to sign a written agreement which itself complies with the Statute of Frauds." It cited *Cooper Petroleum Co. v. La Gloria Oil and Gas Co.*, 436 S.W.2d 889 (Tex.1969), "where 'the promise was to sign a written guaranty, and a written guaranty would have been enforceable.'"

This exception is not present here. Margie requested and obtained no jury finding that Frank promised to sign an instrument complying with the Statute of Frauds. Assuming, however, that a *"Moore" Burger* exception would be available to Margie, she could not recover under it.

The jury found that Frank should have expected his oral promise to induce Margie's performance of her promises, and that such promise (without Frank's performance) caused Margie an "injury of substantial and definite nature . . . ." Frank argues that no evidence supports the jury's finding that Margie suffered such an injury.

We agree with Frank. When Frank orally agreed to Margie's settlement proposal,

Isbell passed the scheduled hearing. This caused Margie no harm which she has proven. She could have rescheduled her hearing. Isbell offered to do that. Margie never rescheduled the hearing, perhaps because shortly after the scheduled hearing had been passed, Frank paid all the child support payments he had missed, plus one which Margie had agreed to waive.

Margie argues that she offered to return this latter payment, and that her waiver of that payment was part of a "substantial and definite injury." The record does not reflect that Frank ever accepted Margie's offer. Considering this, her waiver of a payment which Frank paid anyhow is not part of a "substantial and definite injury."

In *"Moore" Burger, supra*, the party seeking to avoid the Statute of Frauds had waived an opportunity to bid on some valuable property. Evidence suggested that they did so because the defendants had orally promised to lease them the property for more than one year. Instead, the defendants bought the property and sold it to another party.

At trial, Margie presented no evidence of an injury similar to that involved in *"Moore" Burger*. Accordingly, the jury's finding that she suffered a "substantial and definite injury" is without evidentiary support, and her attempt to avoid the Statute of Frauds through the "promissory estoppel" exception must fail, even if the exception is applicable.

This brings us to Margie's assertion that she had an action for common law fraud. The decision in *Hooks v. Bridgewater* was addressed to fraud, and it was obviously common law fraud. Her counsel cites, as does the Court of Civil Appeals, the line of cases which allows a recovery when there is a promise made without an intention to perform, made for the purpose of having the opposition party's relying on it, which is relied upon, and so forth. *Oil Well Division, United States Steel Corp. v. Fryer*, 493 S.W.2d 487 (Tex.1973); *Stanfield v. O'Boyle*, 462 S.W.2d 270 (Tex.1971).

The *Oil Well Division* opinion did not deal with the Statute of Frauds, nor did the Court of Civil Appeals opinions cited by the Court of Civil Appeals in this case.[2] *Stanfield v. O'Boyle*, cited just above, did involve a promise to convey realty. The failure of this Court to discuss the Statute of Frauds in its *Stanfield* opinion is explained in the Court of Civil Appeals opinion in *Stanfield*: "Although he pleaded the Statute of Frauds in bar, he [Stanfield] makes no contention here that the contract sued on contravenes the statute, and disavows reliance on that legislation in oral argument." 452 S.W.2d 574 at 576. The reliance, therefore, by the Court of Civil Appeals on *Stanfield* as a Statute of Frauds case is misplaced.

■ Moreover, the Court of Civil Appeals in this case erroneously used the "loss of bargain" measure of damages,—the value of Frank's interest in the house. To support its use of that measure, the Court of Civil Appeals cited *El Paso Development Co. v. Ravel*, 339 S.W.2d 360 (Tex.Civ.App. —El Paso 1960, writ ref'd n. r. e.). That case is inapposite here. It involved allegations that the defendant fraudulently induced the plaintiff to sign a contract. Frank's fraud, as found by the jury, did not induce Margie to sign a contract.

By affirming Margie's award for such damages, the Court of Civil Appeals has enforced an oral promise to convey land, despite the Statute of Frauds, merely because Frank did not perform that promise. If we allowed that holding to stand, the Statute of Frauds would become meaningless.

■ Margie contends that her "compromise and settlement" theory supports the trial court's judgment in her favor. We disagree. In 1887, Judge Stayton, writing for the Court, quoted from Pomeroy on Equity Jurisprudence as follows:

*[I]f a doubt or dispute exists between parties with respect to their rights, ... a compromise into which they have voluntarily entered must stand ....* [Emphasis added.]

*Gilliam v. Alford*, 69 Tex. 267, 271, 6 S.W. 757, 759 (1887).

The italicized language above describes a type of dispute which was absent the day Frank accepted Margie's settlement proposal. Frank did not deny that he owed the child support. He agreed to Margie's proposal, not because he disputed her demand for the payments in her contempt motion, but because he *could not dispute* the contempt motion and wanted to avoid being held in contempt. For this reason, Frank argues that the first jury finding (Margie and Frank had a bona fide dispute the day they entered the settlement agreement) is without evidentiary support. We agree.

The Court of Civil Appeals judgment for Margie is reversed, and the judgment is rendered for Frank. The Court of Civil Appeals judgment for Isbell is affirmed.

McGEE, J., concurs.

McGEE, Justice, concurring.

I concur in the result reached by the Court, and I agree that the statute of frauds precludes Margie's recovery against Frank. However, I disagree with the holding that Margie failed to preserve error regarding the judgment n. o. v. in favor of her former attorney, Allen Isbell.

Margie sued Isbell for his failure to reduce to writing Frank's agreement to convey his interest in the house. Her malpractice cause of action was an alternative ground of recovery which was contingent on her failure to recover against Frank. After awarding Margie damages against Frank, the trial court disregarded the jury's findings of negligence and proximate cause

2.  *Radio KBUY, Inc. v. Lieurance*, 390 S.W.2d 16 (Tex.Civ.App.—Amarillo 1965, no writ); *Southwestern Indem. Co. v. Cimarron Insurance Co.*, 334 S.W.2d 831 (Tex.Civ.App.— Waco 1960, no writ); and *El Paso Development Co. v. Ravel*, 339 S.W.2d 360 (Tex.Civ.App.—El Paso 1960, writ ref'd n. r. e.).

against Isbell. Margie appealed this action to the court of appeals, but that court expressly did not consider the assignment of error because it sustained Margie's recovery against Frank.

Frank filed an application for writ of error in this Court. In her reply, Margie filed a cross-point requesting this Court to remand the cause to the court of appeals for consideration of her appeal against Isbell if we reverse the lower courts' judgments against Frank. Isbell was served with copies of Frank's writ of error application and Margie's reply, and he filed a brief responding to Margie's cross-point against him. All parties appeared for arguments.

The Court's holding is that Margie was required to file a motion for rehearing in the court of appeals, and by implication, an application for writ of error to this Court, complaining of the court of appeals' failure to consider and sustain her assignment concerning an alternative ground of recovery. I do not believe the Rules of Civil Procedure, or prior case law, require the prevailing party at the court of appeals to file either a *motion for rehearing* or an application for writ of error when she has obtained the full relief to which she was entitled.

A party may file an application for writ of error only when she has been denied some form of relief by the judgment of the court of appeals. Clearly, Margie was not entitled to complain of the court of appeals' judgment, in the absence of an appeal by Frank, because she was not "aggrieved" by that judgment. *In re Johnson*, 569 S.W.2d 882 (Tex.1978); *Trad v. General Crude Oil Co.*, 474 S.W.2d 183 (Tex.1971). The rule has been stated that "[o]ne who has obtained the utmost relief which he seeks from a court of civil appeals cannot show 'good cause' for review on application, regardless of how erroneous some of the lower court

holdings may be." Hatchell & Calvert, *Some Problems of Supreme Court Review*, 6 St. Mary's L.J. 303, 309 (1974). Margie pleaded no right of recovery against Isbell unless she was denied recovery against Frank. Because the court of appeals sustained the trial court's judgment in favor of Margie against Frank, it was not required to and did not pass on Margie's assignment against Isbell. Thus, the court's failure to consider and sustain Margie's contingent assignment was not error, *see McKelvy v. Barber*, 381 S.W.2d 59, 64 (Tex.1964), and such action could not form the basis for a point of error in an application to this Court.

This result is consistent with the rules[1] concerning motions for rehearing. A motion for rehearing is required only if a point of error is required. *See* Rule 469(e). Rule 458(a) provides for a motion for rehearing only of any matter "determined" by the court of appeals. The court of appeals made no determination of Margie's assignment against Isbell, and its failure to make a determination could not be assigned as error until its original holding, sustaining Margie's recovery against Frank, was determined to be erroneous. Surely, no rule requires Margie to seek a reversal of a holding by the court in her favor after she had argued to the court for that very result.[2]

The procedural problem in this case is one of first impression. The difficulty is not that Margie has presented two independent grounds of recovery, one being conditioned on a denial of the other, but that the grounds of recovery are asserted against different defendants in the alternative. If both causes of action were asserted against the same defendant, and the court of appeals had sustained the trial court's judgment on the first ground only, this Court,

---

1. All rules referred to are the Texas Rules of Civil Procedure.

2. Of course, if the court had granted Frank's motion for rehearing and rendered a new judgment denying Margie recovery against either

defendant, Margie would then be required to file a "second" motion for rehearing complaining of the court's action on rehearing. Rule 458(b); *Oil Field Hauler's Ass'n v. Railroad Comm'n*, 381 S.W.2d 183 (Tex.1964).

upon determining the lower court erred in basing its judgment on the first ground, is authorized to consider the undecided points urged in the court of appeals concerning the second ground of recovery. The plaintiff in such a situation is not even required to assign a separate cross-point in this Court in order to obtain review of the undecided issues. *E.g., Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977). Unquestionably, a motion for rehearing and a writ of error application are not required to preserve error. *Garcia v. Moncada,* 127 Tex. 453, 94 S.W.2d 123 (1936).

In the "familiar" situation described above, the undecided assignments at the court of appeals are considered by this Court to determine if there are grounds to uphold the judgment of the court of appeals. When the grounds of recovery are against different defendants, however, sustaining the undecided assignment and awarding recovery against a different defendant requires a reversal or modification of the lower court's judgment, even though the plaintiff prevails in both judgments. Nevertheless, this Court has held that the party prevailing in the court of appeals is entitled to have his assignments which were properly presented there, but not passed on by that court, considered by the Supreme Court "in so far as necessary to determine what judgment should have been rendered" by the court of appeals. *McKelvy v. Barber,* 381 S.W.2d 59, 64 (Tex.1964); *Holland v. Nimitz,* 111 Tex. 419, 239 S.W. 185, 188 (1922).

Margie prevailed in the court of appeals, even though the judgment of that court denied her recovery against Isbell. That court did not decide the merits of her assignments against Isbell because they were rendered immaterial under its original holding. She is entitled to have those points considered when this Court reverses the lower court's holding. Even if Margie were to be viewed as the "losing party" with respect to the recovery against Isbell, she is still entitled to have this Court review the undecided assignments without the necessity of an application for writ of error. This was the holding of *McKelvy v. Barber,* where the briefs of the *losing* party at the court of civil appeals were used to bring forward an undecided issue which required us to *reverse* the judgment of the lower court. 381 S.W.2d 59 (Tex.1964). Even though the plaintiff in *McKelvy* had been denied all relief by the court of appeals, we rejected the suggestion that a motion for rehearing and a point of error were required of the losing party in order to preserve error on his undecided point. In doing so, we stated:

A careful and seasoned appellate practitioner would have included in his application for writ of error a point asserting that the Court of Civil Appeals erred in failing to consider and sustain the points of error dealing with negligence and causation. Respondent says, in effect, that the failure to do so here requires us to affirm the judgment of the trial court no matter how erroneous it may be. That approach might save the Supreme Court some time, but it is also calculated to entrap the inexperienced appellate advocate. The attack in this Court is upon the judgment of the Court of Civil Appeals. That judgment rests squarely upon a single holding, which has been brought forward for review. When it is determined, as we have in this instance, that the conclusion reached by the intermediate court is unsound, it would certainly be proper to remand the cause to that court for a ruling on the points of error not previously considered by it....

381 S.W.2d at 65.

By filing a cross-point in this Court, Margie has done more than we have previously required of the prevailing party in the court of appeals. This Court clearly has jurisdiction to consider the matter raised in her cross-point. It has been suggested, however, that a motion for rehearing and a point of error were technical requirements necessary to give the Court jurisdiction over Isbell.

This Court has no separate concept of personal jurisdiction; its jurisdiction includes all questions of law properly presented to it. All parties in a cause before the court of appeals are parties to the same cause in the Supreme Court if they are affected by a matter before this Court. In contrast to .the appellate rules for the courts of appeals, this Court has no provisions for limited appeals, *see* Rule 353, or jurisdictional requirements for appeal bonds or notice of appeal, *see* Rules 354–56, by which a party in the lower court may be expressly excluded from an appeal. Even the requirement for service on the respondent of an application filed in this Court, found in Rule 471, has been held to be directory rather than jurisdictional. *Martin v. Granger*, 205 S.W. 725 (Tex.1918). Since Isbell was properly served, and since he filed a brief and appeared for arguments in this Court, there is no injustice in reaching the points of law [3] asserted against him to determine what judgment should have been rendered by the court of appeals. Moreover, I believe this Court is required to do so.

I concur in the result reached by the majority, however, because I would overrule Margie's assignments on the basis that there was no evidence to support the jury's finding of negligence against Isbell. Accordingly, I would render judgment that Margie take nothing from either defendant.

---

**3.** Margie's cross-point in this Court requests a remand to the court of appeals. However, the undecided assignments concern only questions of law, and they may be properly determined by this Court without the necessity of a remand.