TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00071-CV






Terry Kottke and Joan Kottke, Appellants



v.



Stephen Scott and Crystal Scott, Appellees






FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT

NO. 13,336, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N


 Stephen and Crystal Scott sued Terry and Joan Kottke for breach of an oral contract
for the sale of real property. After a bench trial, the district court found that the Kottkes had
breached an oral contract to sell their real property to the Scotts and awarded the Scotts $4,658.42
in damages. Because we determine that, as a matter of law, there is no evidence that the parties
entered into a contract, we will reverse and render judgment that the Scotts take nothing on
their claim.


BACKGROUND

 The Kottkes own real property--consisting of land and an affixed mobile home--at
4017 East Highway 21 in Dime Box. The Scotts contacted the Kottkes to find out whether the
Kottkes would be willing to sell the property. The Kottkes verbally agreed to sell the property to the
Scotts for $35,000 if the Scotts paid $2,000 as a down payment, at which point the parties
would execute a written contract for the sale. The parties did not discuss the amount of the monthly
payments to be made after the down payment. Instead, because the Scotts could not immediately pay
the down payment, the Kottkes agreed to allow the Scotts to rent the property for $225 per month
on a month-to-month basis pursuant to a written lease that the parties executed in August of 2005.
A special provision in the lease stated that the Scotts would be "responsible for all repairs" to
the property.

 Both sides testified that the initial agreement was for the Scotts to rent for
two months, and then, in October, the Scotts were to provide the down payment. However, the
Scotts were not able to provide a down payment in October, and instead were going to "try to"
provide one by the end of 2005, so they notified the Kottkes, who allowed the Scotts to
continue renting.

 While renting the property, the Scotts installed carpet and laminate flooring, painted
several rooms, and made other repairs to the property. Mrs. Scott testified that the Scotts paid for
these improvements in cash, and that, together with compensation for the Scotts' labor, the cost of
the improvements was $4,658.42. Mrs. Scott stated that she called Mrs. Kottke in January 2006 to
let the Kottkes know that the Scotts had the down payment, but Mrs. Kottke advised her at that time
that the Kottkes were no longer willing to sell to the Scotts. On January 25, 2006, the Kottkes sent
a letter to the Scotts, asking them to leave the property by the end of February. The Scotts left the
property in March. They then sued the Kottkes, asserting as their sole ground for recovery the
Kottkes' breach of an alleged oral contract to sell the property.


 The district court found that the Kottkes had entered into an oral contract to sell the
property to the Scotts and that the contract was enforceable and not subject to the statute of frauds,
see Tex. Bus. & Com. Code Ann. § 26.01 (West 2009), because the Scotts qualified for the equitable
exemption from the statute recognized in Hooks v. Bridgewater, 229 S.W. 1114 (Tex. 1921). The
district court awarded the Scotts $4,658.42, purportedly to compensate them for the amount
their improvements had increased the value of the Kottkes' property. The Kottkes challenge this
judgment, alleging that (1) the Scotts presented no evidence of an oral contract for sale of
real property, (2) the Scotts' prior breach bars their recovery for breach of the alleged contract,
(3) the statute of frauds bars the Scotts' claim for breach of contract, (4) the Scotts presented
insufficient evidence that they qualified for the Hooks exception to the statute of frauds, and (5) the
Scotts presented insufficient evidence of their damages because they did not show that the amount
they allegedly spent to make repairs to the property represented the increase in value to the property.


DISCUSSION

 In their first issue, the Kottkes assert that there is no evidence of a contract for the
sale of their real property to the Scotts. We will sustain a no-evidence point only if (1) there is a
complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a
vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite
of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005); King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001). We view the evidence in the light most favorable to the trial court's findings,
indulging every reasonable inference that would support those findings. City of Keller, 168 S.W.3d
at 807, 822.

 To establish the existence of an enforceable contract, a party must prove (1) an offer,
(2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter
and essential terms of the contract, and (4) consideration, or mutuality of obligations. See Baylor
Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (Tex. 2007); Harco Energy, Inc. v. Re-Entry People, Inc.,
23 S.W.3d 389, 392 (Tex. App.--Amarillo 2000, no pet.) (citing Federal Sign v. Texas S. Univ.,
951 S.W.2d 401, 408-09 (Tex. 1997)). To determine whether the parties have formed a contract
through offer, acceptance, and mutual assent to the contract terms, we rely on "the objective standard
of what the parties said and how they acted, not on their subjective state of mind." Texas Disposal
Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 589 (Tex. App.--Austin 2007,
pet. denied); see Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other
contract, the parties' intent is governed by what they said, not by what they intended to say but did
not."); Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness
to enter into a bargain, so made as to justify another person in understanding that his assent to that
bargain is invited and will conclude it.").

 The Kottkes argue that no contract was formed for two reasons. First, the Kottkes
assert that the evidence conclusively establishes that their offer to sell the property was conditioned
upon the Scotts' accepting the offer by providing a down payment. It is undisputed that the
Scotts never provided a down payment. Second, the Kottkes argue that essential terms of the alleged
contract were never agreed to, such that the Scotts and Kottkes had, at best, an unenforceable
agreement to engage in future negotiation. 

 Mrs. Kottke testified that although she and her husband had agreed to sell the property
if the Scotts provided a down payment, "[w]e decided not to do a land contract because they never
came up with the $2,000 down payment in October as promised. And again they said they would
have it at the end of the year, 2005, and they still didn't have it." Later, she confirmed that the Scotts
did not take possession of the property pursuant to an agreement to purchase it; instead the Scotts
leased the property because no purchase agreement could be reached--"Not until they had the down
payment and a contract was written up." Her husband testified similarly, stating that they had agreed
to sell the property to the Scotts "if they had the $2,000 down payment."

 Mrs. Scott's testimony confirms the Kottkes' view of the oral agreement. When
asked to explain the terms of the oral agreement, Mrs. Scott testified: "To owner finance the home
the agreement was to come up with a down payment and after the down payment they would sign
the owner financing agreement with us." In 2005, she had sent the Kottkes a letter stating that the
Scotts were "still working on the down payment" and that "[h]opefully at the end of the year we
will be able to send the money to draw up the contract." At trial, the Kottkes' attorney questioned
Mrs. Scott about this letter:


Q: Towards the bottom of this letter you stated, hopefully at the end of the year
we will be able to send the money to draw up the contract. What did you
mean by that?

 

A: To draw up the owner financing contract, we would have the money by the
end of the year, we would try to.


Q: Why was it important to draw up the contract?


A: It was important to draw up the contract to owner finance, to purchase the
actual mobile home.


 Q: So up until the time to draw up the contract, you hadn't purchased it;
is that fair to say?


 A: Correct.


Mrs. Scott further acknowledged that the Scotts never paid the down payment, that the monthly
rental payments would not apply towards the down payment, and that, consistent with the special
provision of the month-to-month lease, that "the agreement was that we would do all the repairs at
our own expense."

 Viewing the evidence in the light most favorable to the district court, the parties'
testimony reflects that they reached an agreement that the Kottkes would sell to the Scotts within a
certain time frame--at first, by October 2005, and then by the end of 2005--if the Scotts provided
to the Kottkes the $2,000 down payment. But the Scotts did not provide a down payment within
the agreed upon period of time. Thereafter, when, after the agreed deadline had passed, the Scotts
offered to provide the down payment--not by writing a check, but by stating in a telephone
conversation that they finally had the down payment--the Kottkes declined to accept it. Even before
the parties' agreed deadline had passed, the Kottkes would have had a right to withdraw their offer
at any time before the Scotts accepted by providing a down payment. See Bowles v. Fickas,
167 S.W.2d 741, 743 (Tex. 1943). In Bowles, the Texas Supreme Court held that no contract was
formed where the seller offered to sell land on the conditions that the buyer sign a written contract
and deposit $1,000 at a particular bank in earnest money. Id. at 742. The buyer received this offer,
and signed the contract at the end of April, but did not provide the $1,000. Id. On May 15, the
seller "declared the deal off." Id. Then, on May 17, the buyer deposited $1,000 with the bank. Id.
In holding that the parties never entered into a contract, the supreme court explained that the seller
"had the absolute right to withdraw the offer at any time before [buyer] accepted same in the manner
prescribed. Since, therefore, no such acceptance had occurred, [seller] still retained the right . . . to
withdraw the offer as she did and thus prevent any contract from arising between her and [buyer]."
Id. at 743; see Restatement (Second) of Contracts §§ 30(1), 50(1) (1981) ("An offer may invite or
require acceptance to be made by an affirmative answer in words, or by performing or refraining
from performing a specified act . . . ."; "Acceptance of an offer is a manifestation of assent to the
terms thereof made by the offeree in a manner invited or required by the offer."). Unlike the parties
in Bowles, the parties in this case had established a time frame during which the offer was to be
accepted, but the Scotts did not attempt to accept the offer during that time. See Texas Pipe Line Co.
v. Miller, 84 S.W.2d 550, 551 (Tex. Civ. App.--Eastland 1935, no writ) ("The acceptance must
come within the terms of the offer. In other words, if the offer contains a specific time limitation
within which it must be accepted, the plaintiff must allege and prove that the acceptance comes
within such time."); Restatement (Second) of Contracts §§ 36(1)(a),(2) (1981) ("An offeree's
power of acceptance may be terminated by . . . lapse of time"; "In addition, an offeree's power of
acceptance is terminated by the non-occurrence of any condition of acceptance under the terms of
the offer."). Because the Scotts did not accept the offer within its terms, their attempt to accept the
Kottkes' offer of sale in 2006 did not create a contract. See Restatement (Second) of Contracts
§ 35(2) (1981) ("A contract cannot be created by acceptance of an offer after the power of acceptance
has been terminated in one of the ways listed in § 36 [including lapse of time or non-occurrence of
any condition of acceptance].").


 The Scotts insist that they are nonetheless entitled to sue for breach of contract
because they paid consideration in the form of rental payments, took possession of the property,
and made valuable improvements, thus bringing them within the Hooks v. Bridgewater equitable
exception to the statute of frauds. See 229 S.W. at 1116. Even assuming that rental payments and
possession as tenants and repairs that, per the terms of the lease, were to be paid for by the tenants,
satisfy the Hooks elements, the Scotts cannot rely on the Hooks exception unless they first prove the
existence of an oral contract:


 Appellee is required to do more than give evidence of the three elements
required by Hooks v. Bridgewater to relieve a parol sale of land from the
effect of the Statute of Frauds. The conveyance itself must be proven, and its
existence may not be inferred solely from the existence of the three elements,
especially since appellant denies that any oral conveyance occurred and
asserts that only a tenancy existed.


Hines v. Taylor, 476 S.W.2d 81, 83 (Tex. Civ. App.--Houston [14th Dist.] 1971, no writ) (citing
Arredondo v. Mora, 340 S.W.2d 322, 324 (Tex. Civ. App.--El Paso 1960, writ ref'd n.r.e.)). 

 The Scotts' brief refers to the testimony of Mrs. Scott and Mrs. Kottke as
supplying evidence that a contract existed. As explained above, the record showed that the
parties contemplated entering into a contract by the end of 2005. The record does not support an
interpretation that the Kottkes made an open-ended promise to sell the property to the Scotts at an
unspecified point in the future. See Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982) (noting that
promissory estoppel applies to sale of land only when promise is to sign document that itself
complies with statute of frauds). 

 Even assuming that the Scotts had proven that the Kottkes had agreed to convey
the property to them, the agreement was too indefinite to be legally binding. Generally, a contract
is legally binding only if its terms are sufficiently definite to enable a court to understand the
parties' obligations. T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992);
see Restatement (Second) of Contracts § 33(2) ("The terms of a contract are reasonably certain
if they provide a basis for determining the existence of a breach and for giving an appropriate
remedy."). "The rules regarding indefiniteness of material terms of a contract are based on the
concept that a party cannot accept an offer so as to form a contract unless the terms of that contract
are reasonably certain." Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 846
(Tex. 2000) (internal quotes omitted). An agreement to make a future contract is enforceable only
if it is "specific as to all essential terms, and no terms of the proposed agreement may be left to
future negotiations." Foster v. Wagner, 343 S.W.2d 914, 920-21 (Tex. Civ. App.--El Paso 1961,
writ ref'd n.r.e.). "It is well settled law that when an agreement leaves material matters open for
future adjustment and agreement that never occur, it is not binding upon the parties and merely
constitutes an agreement to agree." Fort Worth Indep. Sch. Dist., 22 S.W.3d at 846. 

 The evidence shows that several essential terms of the Scotts' agreement with the
Kottkes were left to future negotiation. The Scotts contended that the property could not be financed
through a bank, (1) and they therefore depended upon the Kottkes' future agreement to finance the
property in order to be able to complete the purchase. Mrs. Scott stated in her affidavit that the terms
of the agreement included providing the $2,000 down payment "at 10 percent interest." She testified
that the purchase price was $35,000, but she acknowledged that the parties never discussed the
amount of the monthly payments. The record contains no evidence as to whether or how often the
interest was to be compounded, how payments were to be made, or any other terms of a purchase
or financing agreement. Although courts have implied terms when the surrounding circumstances
left little doubt as to the parties' intentions, Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 134
(Tex. App.--Waco 2005, pet. denied), we cannot imply terms where the parties did not reach
an agreement, but merely planned to reach an agreement that never came to fruition, see Pine
v. Gibraltar Sav. Ass'n, 519 S.W.2d 238, 244 (Tex. Civ. App.--Houston [1st Dist.] 1974, writ ref'd
n.r.e.) (holding defendant could not be liable for breach of unenforceable "agreement to agree" to
finance construction project where loan agreement incorporated "prevailing market rates" and
"industry standards" that could not be determined from record and agreement did not specify how
interest and principal were to be repaid).

 The Scotts' payment of rent and repairs to the Kottkes' property, made consistent
with their written lease, did not transform the oral "agreement to agree" into a binding contract. See
Restatement (Second) of Contracts § 50 cmt. a (1981) ("The acceptance must manifest assent to the
same bargain proposed by the offer, and must also comply with the terms of the offer as to the
identity of the offeree and the mode of manifesting acceptance."). In Bryant v. Clark, the court
held that a written contract for the sale of land was too indefinite to authorize a judgment of specific
performance, even though the plaintiff argued that he was entitled to specific performance because
he had already spent money having the property surveyed and the abstract brought to date, in
addition to paying $400.00 in earnest money. 358 S.W.2d 614, 616-17 (Tex. 1962). The written
contract in Bryant provided: "Price to be $ 10,000.00 (Ten thousand dollars). Mr. Bryant agrees
to pay $ 2,000.00 cash and balance at 6% interest, payments to be agreed upon by seller and buyer.
We have agreed as follows: 15 annual installments as balance." Id. at 615. However, because the
parties did not specify the amount of the monthly installments or when the interest was payable
and in what amounts, the Court held that the contract was too indefinite. Id. at 616-17. The Scotts'
agreement with the Kottkes is similarly indefinite and unenforceable. See Restatement (Second) of
Contracts § 60, illus. 2 (1981). (2)

 The fact that the Scotts are suing for damages rather than specific performance
does not change the fate of their claim for breach of contract. Insufficiency of a contract not only
precludes recovery for specific performance but also for damages for the breach of that contract.
Wilson v. Fisher, 188 S.W.2d 150, 152 (Tex. 1945); see Alworth v. Ellison, 27 S.W.2d 639, 640
(Tex. Civ. App.--Eastland 1930, writ ref'd) (stating that an "action for damages for the breach of
a contract is, in effect, an action for its enforcement, and the statute [of frauds], in denying an action
for its enforcement, likewise denies an action for damages for its breach."); Botello v. Misener-Collins Co., 469 S.W.2d 793, 795 (Tex. 1971) ("Without an agreement of the parties on this
essential feature of the trade [how deferred payment of $195,000 was to be paid], there is no contract
for the court to enforce--either by specific performance or by awarding damages for breach.").

 We sustain the Kottkes' first issue. Because of our disposition of this issue, we need
not address issues two through five. See Tex. R. App. P. 47.1.


CONCLUSION

 Because there is no evidence that the Scotts entered into a contract with the Kottkes,
they cannot recover damages for breach of contract as a matter of law. We therefore reverse the
judgment of the district court and render a judgment that the Scotts take nothing on their claim.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed: April 14, 2011
1. Mrs. Scott stated in her affidavit that Lee County Bank declined to finance the purchase
"because of environmental issues," but she later clarified in her testimony at trial that the Scotts did
not apply for financing through the bank because they spoke to a man at State Bank in Dime Box
who was familiar with the property and mentioned environmental problems, which Mrs. Scott
contended would prevent the Scotts from obtaining financing from a bank.
2. Illustration 2 provides:


 A agrees to sell and B to buy a specific tract of land for $ 10,000, $ 4,000 in cash and
$ 6,000 on mortgage. A agrees to obtain the mortgage loan for B or, if unable to do
so, to lend B the amount, but the terms of loan are not stated, although both parties
manifest an intent to conclude a binding agreement. The contract is too indefinite to
support a decree of specific performance against B, but B may obtain such a decree
if he offers to pay the full price in cash.