

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00131-CV

_____

KEN LANDERS AND HIS WIFE, CLARLINDA LANDERS, Appellants

V.

AURORA LOAN SERVICES, LLC, AND MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR AURORA LOAN SERVICES, LLC, Appellees

On Appeal from the 392nd District Court
Henderson County, Texas
Trial Court No. 2009B-1283

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# OPINION

Ken and Clarlinda Landers have been unsuccessful in lowering their interest rate and payments on their home mortgage owed to Aurora Loan Services, LLC, and Mortgage Electronic Registration Systems, Inc. (collectively, Aurora). The Landerses sued Aurora in Henderson County[1] for fraud connected with that failure, but have been thwarted by the trial court's summary judgment denying their claims.[2] We affirm the trial court's summary judgment, because—although (1) the Landerses' fraud cause of action is not, as a matter of law, supplanted by a contractual nature of the case and (2) the Landerses' fraud cause of action is not, as a matter of law, barred by the statute of frauds—(3) the Landerses' fraud cause of action has been negated as a matter of law.

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id.*

To prevail on a no-evidence motion for summary judgment, the movant must first allege that there is no evidence of one or more specified elements of a claim or defense of which the nonmovant would have the burden of proof at trial. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see* TEX. R. CIV. P. 166a(i). A nonmovant will defeat a no-evidence summary judgment

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]They appeal the summary judgment rendered in favor of Aurora, but only on their claim that Aurora committed fraud in connection with failed efforts to obtain different financing for their home.

motion if the nonmovant presents more than a scintilla of probative evidence on each element of his or her claim. *Galindo v. Snoddy*, 415 S.W.3d 905, 911 (Tex. App.—Texarkana 2013, no pet.); *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Aurora takes the position that summary judgment was proper because, as a matter of law, the fraud claim could not be raised and that, even if it could be raised, there was no evidence of fraud (or that it conclusively proved there was no fraud).

The Landerses contend in connection with both types of summary judgment that the court erred by rendering summary judgment because there is evidence sufficient to raise an issue of material fact on their fraud claim and that the remedy is legally available under these facts. Aurora argues that the evidence cannot be understood to imply that it acted fraudulently.

Generally, the background of this case shows that the Landerses purchased a house in 2006, taking a note for $440,000.00. In 2009, they began having difficulty making the payments. The Landerses asked the lender to allow them to make a lower payment, and they were permitted to do so for several months. The written document setting out the lower payment indicates that it was not permanent. That document indicates that it was an interim note with the fourth monthly payment being substantially higher than the first three. The Landerses believed,

based on statements by Aurora, that a loan modification that would substantially lower their payments would be completed before the fourth payment. However, the expected long-term changes in their monthly payment did not materialize, and Aurora demanded payment under the original note and began foreclosure proceedings. Since 2009, the Landerses have made payments on neither the mortgage nor the taxes on the property, despite continuing to live there (as Aurora repeatedly points out at every full stop—five times in all).

The Landerses sued Aurora, claiming that it had committed common-law fraud against them by telling them they were eligible for a H.A.M.P.[3] modification, but later concluding they were not, telling them not to make a payment so they would qualify and then claiming that they breached the modification program when they followed that instruction, and finally failing to ever tell the Landerses they were not eligible. As summarized by the Landerses, their claim is that Aurora made false representations to induce them to enter the modification program with no intention of ever actually modifying the loan.

The elements of common-law fraud are:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam);

*Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 658–59 (Tex. App.—Texarkana 2013, no pet.).

---

[3]Home Affordable Modification Program—a federal program set up to help homeowners with loan modifications on home mortgage debt.

Because this is an appeal from summary judgment, Aurora must have established its position as a matter of law. If there is any conflicting evidence, the issue becomes one of fact for the jury to decide.

The Landerses contend that Aurora did make a material representation. They alleged a number of behaviors as constituting fraudulent behavior. The Landerses claim Aurora informed them on September 1, 2009, that they were successful in the temporary steps because they had made the three requisite payments and mailed a letter to them the same day stating that they had successfully completed the steps and were being offered a permanent home retention plan.[4] They claim that the promise to make a loan modification was false and that Aurora knew that it was false. In support, the Landerses direct the Court to portions of Aurora's own telephone logs indicating that the customer was advised that the fourth payment did not need to be paid and acknowledging that all three payments had been made. The Landerses further alleged that, during this entire period, Aurora knew that they were ineligible for the promised modification, making the representations false.

Aurora's responsive arguments cover two areas. Aurora argues that, as a matter of law, the suit could not have been brought as a fraud claim and that, if it could have been brought as a fraud claim, there was no evidence to support that allegation. Aurora's avoidance contention has

---

[4]Aurora seems to make much of the Landerses' failure to submit their last federal income tax forms—however, it is apparent that the forms had already been provided to Aurora on CD, and there is evidence that Aurora informed the Landerses that they did not need to submit them again. Aurora's complaint is that the Landerses failed because they did not provide precisely the same information a second time. This argument has very little validity—and is in fact the type of repetitive requirement that has been a factor in at least one class action. *Mauder & Chao, et.al. v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2013 U.S. Dist. LEXIS 142357 (U.S.D.Ct. N.D. Cal. 2013 ). Aurora Loan Services, LLC, was a unit of the now defunct Lehman Brothers.

multiple prongs, but one main focus lies in its position that the fraud claim could not be pursued because it actually sounds in contract.

*(1)*      *The Landerses' Fraud Cause of Action Is Not*, *as a Matter of Law*, *Supplanted by a Contractual Nature of the Case*

Aurora directs the Court to a number of cases that can be summarized as stating that, if a cause of action seeks a recovery that could also be obtained as a breach of contract, the claim is actually a breach of contract claim, no matter how presented.

For example, the court held in *Baylor University v. Sonnichsen*, 221 S.W.3d 632, 637 (Tex. 2007), that where benefit-of-the-bargain damages are the same damages a plaintiff sought to recover under an unenforceable contract, the fraud claim fails. *See also Nagle v. Nagle*, 633 S.W.2d 796, 801 (Tex. 1982); *Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998) (except for fraudulent inducement, contract damages may not be pursued in common-law tort). The Landerses acknowledge these cases, but point out that the requested damages are not for benefit of the bargain because they are suing for damages incurred in repairing and maintaining the house. Their position, simply put, is that the benefit of the bargain would be the new loan, but the damages they seek are not based on the loss of the loan.

Here, there was no contract on which suit could be brought. The claim does not rest on the original loan agreement; it instead involves the issue of whether Aurora committed fraud in connection with the Landerses' efforts to obtain a different, cheaper loan. We are reluctant to conclude that this claim must be considered one properly brought for breach of contract when there was no contract to breach. This would set up the ideal result for Aurora, a "Catch-22" for

6

the Landerses: they could not sue for breach of contract because there was no new contract, and they could not sue for fraud because the damages sounded in contract. We reject this argument. *See Peterson Group, Inc. v. PLTQ Lotus Group, L.P.*, 417 S.W.3d 46, 62–63 (Tex. App.— Houston [1st Dist.] 2013, pet. filed) (contract damages arise from breach of contract, fraud damages from fraudulent conduct). The duty not to commit fraud is different from the duty to conform to the terms of a contract. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 47–48.

*(2)* *The Landerses' Fraud Cause of Action Is Not, as a Matter of Law, Barred by the Statute of Frauds*

Aurora also argues that the claim is barred by the statute of frauds because the Landerses seek to recover what they would have gained had the promise been performed. They base this argument on the notion that, because they sought only breach of contract damages for reliance on the nonexistent contract under H.A.M.P. and because the proposed contract was not in writing, the statute of frauds barred recovery on the contract.

This case involves an allegation of a promise to enter into a new agreement with allegations that the promise was a lie. This is neither a contract nor a proposed contract, and a breach of contract claim under these facts is not viable. Accordingly, the statute of frauds does not apply, and the argument is without merit. *See Haase v. Glazner*, 62 S.W.3d 795, 797, 800 (Tex. 2001) (benefit of bargain); *Nagle*, 633 S.W.2d at 799 (specific performance).

*(3)* *The Landerses' Fraud Cause of Action Has Been Negated as a Matter of Law*

Aurora's motion for traditional summary judgment otherwise alleged that it proved that Aurora made no false representations and that any promise made of its future actions did not

support a fraud claim, while Aurora's no-evidence motion claimed that the Landerses had no evidence to support their fraud claim.

The timeline in this case reflects a number of communications between various representatives of Aurora and the Landerses. Some were recorded, some were not; and the written communications fail to reflect the reality as orally explained by Aurora. There is no dispute that Aurora representatives on several occasions told the Landerses to disregard letters received or to be received and that, at one point, they simultaneously received a letter from Aurora thanking them for making the required payments and another letter stating that the loan was in default.

Ken Landers provided a lengthy affidavit setting out the course of events and his understanding of Aurora's actions and communications. A few telephone conversations were recorded, transcribed, and placed in the record by the Landerses, as were Aurora's logs of its telephonic and written actions.

Clarlinda Landers also provided an affidavit as summary judgment evidence in which, after recounting the conversations between her husband and various representatives of Aurora, she states that she spoke with Aurora employee Egleah on April 9, 2009.[5] Clarlinda stated that, during that conversation, Egleah established the terms of the modification and stated that there would be a trial period repayment agreement for that permanent loan. The plan, as explained by Egleah, was that, once they made three of the trial payments on time and sent the additional financial information requested, the plan would become a permanent forty-year loan. On

---

[5]Aurora did not address Clarlinda's affidavit in its briefing.

April 8, Aurora had mailed a default notice—Egleah told them to "ignore it, that a plan had been made."

Aurora's logs reflect one interesting and completely unexplained fact: beginning at least several months before this series of events occurred, the mortgagor refused to answer calls or take messages from Aurora.

There are also two letters from the Landerses to Aurora in connection with the repeated request for additional documents noting that they had sent the requested documents, that their tax returns had been sent previously by CD, that they had been told it was not necessary to send them again, and that Aurora should be contacted if there were any questions.

Aurora argues that the fraud claim fails as a matter of law because there is no evidence that the same representative of Aurora promised a loan modification while possessing the necessary state of mind to support a fraud claim. To support its contention that such evidence is mandatory, Aurora relies heavily on *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 530–32 (Tex. App.—San Antonio 2011), *rev'd on other grounds*, 422 S.W.3d 638 (Tex. 2013), a case that appears to be the only Texas case on this precise point of law. The Landerses' brief, on the other hand, does not address *Dynegy* or make an effort to distinguish it from the facts of this case.

In *Dynegy*, an attorney sought to recover attorneys' fees for the legal defense of a former Dynegy officer accused of securities fraud. The attorney was promised payment by at least one corporate employee, but Dynegy failed to pay the attorney over $400,000.00. At trial, the jury found that Dynegy had engaged in fraud by misrepresentation and fraud by omission of a material fact, which was defined for the jury as including a promise of future performance made

with an intent not to perform as promised. Aurora argues, based on *Dynegy*, that, to establish a fraud claim, Landers must have provided some evidence that the same corporate agent committed all the elements of fraud.

That language appears in *Dynegy* as part of a two-paragraph discussion, based almost exclusively on federal cases. The several cases cited there require the individual who made the statement to also have the requisite scienter. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 366 (5th Cir. 2004). Under *Dynegy* and the cases cited therein, fraud is not established if one company agent makes a false statement, but the evidence establishes only that a different officer knows the statement is false. Without contrary authority, we agree with our sister court's rationale and hold that for a fraud claim to survive, the company agent that makes the representation must have the requisite mental state.

We offer this note of caution. Neither in *Dynegy* nor in the present case do we see evidence of any effort by Aurora to manipulate information to actively mislead the Landerses, or customers in general, by limiting information available to certain employees. We do not intend this opinion—and we do not read *Dynegy*—to allow that type of possible scheming by an organization to avoid fraud liability.

There was evidence of a representation made as a positive assertion with intent that it be relied on and which in fact was relied on to the detriment of the Landerses. The apparent claim by Aurora is that the Landerses failed to complete the package to qualify for the promised loan modification. There appears to be a fact issue concerning whether the representation proved false.

10

We find no evidence in this record, however, that the speaker knew the representation was false.  A bit more challenging may be the question of whether there is any evidence raising a fact issue on the alternative means of establishing a fraud cause of action—that the misrepresentation was made "recklessly without any knowledge of the truth."

To raise a question of recklessness, there must be more evidence than merely that the person making the representation turned out to be wrong, even if the fact-finder found that the representation was incorrect here.  There must be some evidence that raises a fact issue concerning recklessness, beyond just being wrong.  Recklessness may be inferred from surrounding circumstances, existing either before or after a representation is made.  *See, e.g.*, *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).  But the recklessness must be that of the person making the alleged misrepresentation.  *Dynegy*, 345 S.W.3d at 530–32.  While the record does raise a fact question concerning whether the speaker was wrong in a representation to the Landerses, we do not find any evidence raising a fact issue concerning whether the speaker was reckless about the truth.    We overrule this contention.

We affirm the summary judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:    March 4, 2014
Date Decided:     May 16, 2014

11